IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANGEL RIVERA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 1:19-1037-KD-N |
| | ) | |
| LT. MCNEAL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Angel Rivera, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R).  This matter is before the Court on Defendants' motion for summary judgment.[1]  (Doc. 26).  For the reasons discussed herein, it is recommended that this motion be DENIED as to Plaintiff's Eighth Amendment claims.

I.    **BACKGROUND AND COMPLAINT ALLEGATIONS**[2]

Plaintiff asserts, while incarcerated at Holman Correctional Facility ("Holman") on September 26, 2019, excessive force was used against him by Lieutenant McNeal, while Captain Smith stood by and watched it happen, in violation of the Eighth Amendment.

According to Plaintiff, the incident occurred when he was housed in a crisis cell (where he had been held for "purposes of the plaintiff's own personal issues").  Plaintiff alleges he was

_____

[1]    The Court converted the Defendants' Answers and Special Report to a motion for summary judgment.  (Docs. 22, 23).

[2]    The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riveria Beach, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

waiting to be moved from the crisis cell back to his original cell in the Restrictive Housing Unit. (Doc. 1 at 5).  However, after his "numerous" requests to be returned to his original cell were denied, Plaintiff began "banging on the cell door".  (*Id*. at 4).  Lieutenant McNeal and Captain Smith responded to calls for assistance to Plaintiff's crisis cell; upon arrival at his cell, Lieutenant McNeal opened his cell and sprayed a gas chemical into the cell, spraying Plaintiff's entire body. Lieutenant McNeal then closed the cell door and escorted other inmates and nurses out of the area due to the chemical fumes.  (*Id*. at 5-6).  Plaintiff claims he "beg[ged] to be moved due to the lack of ventilation in the closed cell" and was forced "to put his face in the toilet bowl and flush it just to be able to breath[e]".  (*Id*. at 5-6).  He further claims when Lieutenant McNeal returned to Plaintiff's cell, he inquired as to why Plaintiff had his head in the toilet, to which Plaintiff responded, "I can't breathe", and Lieutenant McNeal and Captain Smith escorted Plaintiff to the health care unit for decontamination.  (*Id*. at 7).

Plaintiff alleges he was sprayed with tear gas "Just because he was hitting the door."  (*Id*. at 6).  He specifically alleges that he "never at one time disobeyed any direct orders did not continue to hit the door, nor did the plaintiff give any other type of behavior that would of resulted in bodily harm."  (*Id*. at 6).  Plaintiff further alleges that video cameras will confirm that he was "merely sitting on the floor" of his cell when the Defendants arrived at his cell and sprayed an "ungodly amount of chemical tear gas" (*id*. at 9) and that "he never did anything to threaten the matter to where excessive force should have been used."  (*Id*. at 7).

In filing this action, Plaintiff seeks "disciplinary action, money damage, proper health care treatment, transfer to [] work release to avoid retaliation disciplinary action".[3]  (*Id*. at 13).

---

[3]     Plaintiff Rivera's request for a prison transfer is moot.  The record confirms that Plaintiff Rivera was transferred from Holman Correctional Facility within weeks of filing this suit. (*See* Docs. 4, 8, 10).  Plaintiff Rivera is currently incarcerated at Bibb Correctional Facility.  (Doc. 29).

Defendants have answered Plaintiff's suit, denying the allegations asserted against them, and submitted a Special Report in support of their position. (Docs. 22, 23). The court has converted these documents into a motion for summary judgment. (Doc. 26).

## II.   MOTION FOR SUMMARY JUDGMENT

Defendants maintain that Plaintiff was pepper sprayed because he was being disruptive and failed to comply with orders to stop being yelling ang kicking his cell door. (Doc. 23).

Lieutenant McNeal avers that on September 26, 2019, he responded to a call for assistance in the S-Unit (Holman Crisis Cell) and observed Plaintiff Rivera in cell S-1 yelling, using profane language and kicking the glass door of the cell. (Doc. 23-1 at 1). Lieutenant McNeal avers he gave Plaintiff several direct orders to stop being unruly, but Rivera refused to comply with the orders and stated, I want to go back to my cell in lock-up." (*Id*.). Plaintiff was informed he could not return to his original cell until mental health released him from the crisis cell. Plaintiff responded, "Well I'm going to keep banging on the door and yelling until then." (*Id*.). Captain Smith then administered a one second burst of Sabre Red to Plaintiff's facial area to get Plaintiff to comply with orders. (*Id*.). Lieutenant McNeal then escorted Plaintiff to the health care unit where he received a medical assessment and decontamination, including a shower. (*Id*. at 1-2). Lieutenant McNeal further avers that at no time did he use excessive force against Plaintiff, nor did anyone use excessive force against Plaintiff. (Doc. 23-1 at 2).

Captain Smith avers, "[a]t no time was excessive force used on inmate Rivera by me or Lt. McNeal. I do not know why inmate Rivera would make these claims, but these allegations did not occur." (Doc. 23-2 at 2). He declares by affidavit that he responded along with Lieutenant McNeal to Plaintiff's cell in S-Unit on September 26, 2019 and observed Plaintiff yelling, kicking the glass of the cell door and using profane language. (*Id*. at 1). Captain Smith declares that Plaintiff was

given several loud verbal commands to stop kicking the door and "Inmate Rivera refused to comply." (*Id.*). Captain Smith declares that he then "administered a one second burst Sabre Red to inmate Rivera's facial area." (*Id.*).

Defendants have also put forth the Incident Report and Duty Officer Report compiled in regard to this incident. The reports detail that on September 26, 2019, at approximately 2:50 p.m., Captain Smith responded to Plaintiff's cell, S-1. (Doc. 23-4 at 2). According to the reports, Captain Smith gave several verbal commands for Plaintiff to stop kicking the door, but inmate Rivera refused to comply. Captain Smith then administered a one second burst of Sabre Red to Plaintiff's facial area. "Captain Smith ordered inmate Rivera report to the cell door and submit to restraints and inmate Rivera complied and was secured in restraints. . . [and] escorted to the Health Care Unit where he was decontaminated and received a medical assessment." (Doc. 23-4 at 2 and 3). Plaintiff was returned to cell S-1. (*Id.*).

The Duty Post Log reflects that at 3:10 p.m., on September 26, 2019, Lieutenant McNeal was "showering crisis cell inmate (S1) Michael Rivera". (Doc. 23-4 at 7). The Duty Post Log further reflects that at 3:40 p.m., Lieutenant McNeal moved Plaintiff "from crisis cell S1 to S2". (*Id.*).

The Use of Force Investigative Report corroborates the factual details of the Incident Report and concludes that "Captain Smith was justified in using Sabre Red to gain control of an inmate who was clearly out of control and becoming increasingly aggressive. Once sprayed, inmate Rivera quickly complied with Captain Smith's directives." (Doc. 23-3).

Plaintiff has responded in opposition to the Defendants' motion for summary judgment, arguing that use of force is not justified when an inmate "is merely making noise and not posing a direct and imminent threat to any person and not even to himself." (Doc. 28 at 1-2).

4

### III.   STANDARD OF REVIEW.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") (emphasis in original); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis in original) (citation omitted).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (internal citations omitted).

The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. *Garczynski*, 573 F.3d at 1165. "A genuine dispute requires more than 'some metaphysical doubt as to material facts.'" *Id*. (citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id*. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) ("In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations.").

IV.   **DISCUSSION AND ANALYSIS**

A.  **IMMUNITY DEFENSES.**

To the extent Plaintiff has brought this suit against Defendants in their official capacities, Defendants are immune from suit. "Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent." *Penley v. Eslinger*, 605 F.3d 843, 854 (11th Cir. 2010) (citation omitted); *see also Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009) ("A claim asserted against an individual in his or her official capacity is, in

6

reality, a suit against the entity that employs the individual.") (citation omitted).  As a practical matter, then, Plaintiff's § 1983 claims against Defendants in their official capacities functionally reduce to § 1983 claims against the State itself. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (With some exceptions, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.  This jurisdictional bar applies regardless of the nature of the relief sought." (citations omitted)); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) ("[S]tate officials sued in their official capacity are []protected by the [Eleventh A]mendment." (citing *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)).  In addition, "a state agency[] and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable..." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)). Thus, Defendants, in their official capacities, are immune from suit for monetary damages.

As to the claims asserted against Defendants in their individual capacities, the Defendants have plead the defense of qualified immunity against the allegations asserted against them. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).  While there is no doubt that the defendants in this action were acting within their discretionary authority at all times when the acts in question occurred, the Eleventh Circuit has made clear that the defense of qualified immunity "is not available in cases alleging excessive

force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically

to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court

decisions in *Hudson* and *Whitley*."  *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)

(citation omitted).   Therefore, the Court will now address whether this action identifies any

constitutional violation.

## B. Claims Under 42 U.S.C. § 1983.

Plaintiff Rivera proceeds pursuant to 42 U.S.C. § 1983.  "In order for a plaintiff to establish

a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that

the alleged violation was committed by a person acting under the color of state law."  *Martinez v.*

*Burns*, 459 F. App'x 849, 850-851 (11th Cir. 2012) (citing *Holmes v. Crosby*, 418 F.3d 1256, 1258

(11th Cir. 2005)).   There is no dispute that the named defendants, as employees of the Alabama

Department of Corrections, are state actors for purposes of this action. Thus, to establish his

asserted claims, Plaintiff must establish that the named defendants, personally, acted to deprive

him of a constitutional right.   In this action, Plaintiff claims Defendants violated his Eighth

Amendment right when he was sprayed with a chemical agent.

### 1. Excessive Force.

The Eighth Amendment's prohibition against cruel and unusual punishment, U.S. Const.

amend. VIII, governs the use of force by prison officials against convicted inmates.  *Campbell v.*

*Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  In order to establish an Eighth Amendment excessive

force claim against the defendants, Plaintiff must prove both an objective and subjective

component.  That is, he must show that the alleged wrongdoing was objectively "harmful enough"

to establish a constitutional violation and that the defendants "act[ed] with a sufficiently culpable

state of mind; i.e., that they acted maliciously and sadistically to cause harm."   *Hudson v.*

*McMillia*n, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992) (citations omitted); *see*

*also Lumley v. City of Dade City, Fla*., 327 F.3d 1186, 1196 (11th Cir. 2003) (to satisfy the object

conduct, the plaintiff must show the complained of conduct "shocks the conscience").   Both

inquiries are contextual, and "the objective harm inquiry is responsive to contemporary standards."

*Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010).   While not every "malevolent touch" by

a prison guard amounts to excessive force, a de minimis use of force is cognizable under the Eighth

Amendment if it "is not of a sort repugnant to the conscience of mankind."   *See Wilkins v. Gaddy*,

559 U.S. 34, 37-38, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) (noting that an inmate who

complains of a push or shove that causes no discernible injury almost certainly fails to state a valid

excessive force claim) (internal quotation marks and citation omitted).   "Injury and force, however,

are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is

gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely

because he has the good fortune to escape without serious injury."   *Id*. at 38.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as
> long as it is applied "in a good faith effort to maintain or restore discipline [and not]
> maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-
> 21, 106 S. Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d
> 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.
> Ct. 995, 117 L.Ed.2d 156). To determine if an application of force was applied
> maliciously and sadistically to cause harm, a variety of factors are considered
> including: "the need for the application of force, the relationship between that need
> and the amount of force used, the threat reasonably perceived by the responsible
> officials, and any efforts made to temper the severity of a forceful response."
> *Hudson*, 503 U.S. at 7-8, 112 S. Ct. 995; *see also Whitley*, 475 U.S. at 321, 106
> S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From
> consideration of such factors, "inferences may be drawn as to whether the use of
> force could plausibly have been thought necessary, or instead evinced such
> wantonness with respect to the unjustified infliction of harm as is tantamount to a
> knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S. Ct. 1078
> (quoting *Johnson*, 481 F.2d at 1033).

*Skirtch v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002).   Accordingly, in determining

whether or not force used was excessive, relevant factors include the need for the application of

force, the relationship between that need and the amount of force used, the extent of injury

inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to

temper the severity of a forceful response."   *Whitley*, 475 U.S. 312, 320-21.   Notably, prison

officials "acting to preserve discipline and security" are given "broad deference" when evaluating

whether force used was excessive or not.  *Pearson v. Taylor*, 665 F. App'x 858, 863-64 (11th Cir.

2016); *see also Hudson v. McMillian*, 503 U.S. 1, 6, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).

      The court turns now to the "core judicial inquiry", whether the force used against Plaintiff

was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically

to cause harm.  *Hudson*, 503 U.S. at 7.  Defendants assert in their motion that they were called to

Plaintiff's cell due to the disturbance he was making.  As previously discussed, they assert that

when they arrived at his cell, Plaintiff was yelling, cussing, and kicking his cell door.  Defendant

Smith and McNeal aver that they gave multiple verbal commands to stop the behavior, but

Plaintiff continued.   Defendants further aver that Defendant Smith then sprayed a burst of

chemical agent to Plaintiff's face.  The law clearly upholds that "[p]rison guards may use force

when necessary to restore order and need not wait until disturbances reach dangerous proportions

before responding."  *Bennet v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990).  Specifically, force

may be used against a prisoner who fails to comply with the direct orders of an officer.  *Pearson*

*v. Taylor*, 665 F. App'x 858, 864 (11th Cir. 2016) (Officers are not required to convince every

prisoner that their orders are reasonable and well-thought out before resorting to force.") (internal

citation omitted).  And, pepper spray has long been recognized by The Eleventh Circuit as "an

accepted non-lethal means of controlling unruly inmates."  *Danley v. Allen*, 540 F.3d 1298, 1307

(11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F,3d 701, 709 (11th Cir. 2010).   Pepper spray "is designed to be disabling without causing permanent physical injury and is a reasonable alternative to escalating a physical confrontation.   *Pearson*, 665 F. App'x at 864.   Accordingly, a short burst of pepper spray (around 5 seconds or less) is "not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." *Id.*   Based on the record before the court, a reasonable jury could credit Defendants' version of the facts and easily conclude that there was no Eighth Amendment violation.

The record, however, also contains Plaintiff's conflicting version of the facts, which the court is obligated to accept at this procedural stage of the action, "provided they are sufficiently supported by evidence of record," *Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020), and "specific facts" in Plaintiff's sworn complaint must be considered in opposition to summary judgment.   *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).   By Plaintiff's account, he was "merely sitting on the floor" when Defendants arrived at this cell, opened his cell door and Captain Smith sprayed him.[4]   (Doc. 1 at 9).   Plaintiff specifically states in his complaint that he "never at one time disobeyed any direct orders did not continue to hit the door, nor did the plaintiff give any other type of behavior that would of resulted in bodily harm." (*Id*. at 6).   "As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or

---

[4]     While Plaintiff alleges in his complaint that Lieutenant McNeal sprayed him with a chemical agent in violation of the Eighth Amendment, the Defendants and all supporting documentation confirms that Captain Smith administered the chemical spray. (*See* Docs. 23, 23-1, 23-2, 23-3, 23-4).   Accordingly, for purposes of this motion, the court will consider Plaintiff's excessive force allegations to be asserted against Captain Smith and the allegations for failure to intervene against Lieutenant McNeal.

events that are contrary to the laws of nature." *Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013).  Here, Defendants present evidence that consists mainly of various forms of their own testimony (personal affidavits, reports of force prepared by Defendant Smith), and Plaintiff has provided statements that are "non-conclusory descriptions of specific, discrete facts of the who, what, when, and where variety" and directly contradict the correctional officers' testimony that they used force to stop Plaintiff from being disruptive after he refused to comply with multiple orders. *Id*. Thus, the evidence presented by Defendants just pits the correctional officers' word against Plaintiffs' word. *See id*. (noting "a videotape of the incident definitively established what happened and what did not" and was sufficient to discredit plaintiff's testimony on summary judgment); *see also Stryker v. City of Homewood*, 978 F.3d 769, 776 (11th Cir. 2020) (District court erred in discounting a plaintiff's testimony on summary judgment where it was not blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law.); *Green v. Feaster*, 733 F. App'x 80 (4th Cir. 2018) (Court determined it was objectively unreasonable for the defendant officer to pepper spray Greene absent any provocation, where Greene alleged he complied with defendants' orders to stop kicking his cell door, but defendants returned to his cell and sprayed him with pepper spray despite his compliance.).

Furthermore, to the extent that Plaintiff admits having previously been disruptive (banging on his cell door), the law is clear - force used after a situation is controlled (and order is restored) is excessive. *Williams v. Rickman*, 759 F. App'x 849, 853 (11th Cir. 2019) ("even when an initial use of force against a prisoner is constitutionally permissible, continued force is excessive after the prisoner has complied and control has been restored) (citing *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008)).  "The law recognizes that order and discipline are important in running a

12

correctional institution, but that does not authorize the arbitrary use of force, nor does it justify

punitive use of force on difficult inmates not posing a real threat to other persons or raising

security concerns." *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (A basis for an Eighth

Amendment claim exists when, as alleged here, an officer uses pepper spray without warning on

an inmate who may have questioned his actions but who otherwise poses no threat.) (citations

omitted).  The Eighth Circuit reasoned in *Treats v. Morgan*,

> Not every instance of inmate resistance justifies the use of force and use of pepper
> spray will not be justified every time an inmate questions orders or seeks redress
> for an officer's actions.  The test is whether the officer's use of force was reasonable
> under the circumstances, or whether it was punitive, arbitrary, or malicious.  A basis
> for an Eighth Amendment claim exists when, as alleged here, an officer uses pepper
> spray without warning on an inmate who may have questioned his actions but who
> otherwise poses no threat.

*Id*. at 872-73 (internal citations omitted).  Accordingly, Plaintiff's previous disruptive behavior

cannot be considered a threat to prison order or anyone's safety to justify use of force.

As to the remaining factors to be considered, it does not appear that Defendants attempted

to temper their response in any way.  The record lacks any evidence that Plaintiff was warned of

a chemical agent being administered before he was sprayed.  The amount of spray used is also in

dispute, as Plaintiff alleges that an "ungodly" about of chemical agent was sprayed on him,

causing nearby inmates and nurses to have to be escorted out.  (Doc. 1 at 9).  Also, the record

appears to support Plaintiff's allegation that he was left in a contaminated cell unable to breathe

(begging to be let out and forced to put his head in the toilet for breathable air).  A comparison of

the Duty Post Log to the incident reports suggests that Plaintiff remained in his contaminated cell

for approximately 20 minutes after being sprayed, thereby contradicting Defendants' evidence

that Plaintiff immediately submitted to restraints and was escorted to the healthcare unit for

decontamination.  (Compare doc. 23-4 at 1, 2-3 to doc. 23-4 at 7 detailing that force was applied

at approximately 2:50 PM and that Plaintiff was removed from cell S-1 to shower around 3:10 PM and was placed in cell S-2 at 3:24 PM).

> When competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. *See Felicinano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).  Indeed, if "the only issue is one of credibility," the issue if factual, and a court cannot grant summary judgment. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742-43 (11th Cir. 1996).

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020). "[W]hen conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version." *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005).

Accordingly, based on Plaintiff's version of the facts a reasonable fact-finder could conclude that Defendant Captain Smith used excessive force against Plaintiff by spraying him without a present threat or disruption, without warning, and by leaving him in a contaminated cell, unable to breathe, for approximately 20 minutes, regardless of the extent of injury suffered.

As to the objective component, Plaintiff must show that Defendants' alleged conduct in spraying him was "harmful enough" to establish a constitutional violation.  Generally speaking, the harm suffered from pepper spray is considered *de minimis* and falls short of establishing a physical injury necessary for Eighth Amendment purposes. *Cf., McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1245 (11th Cir. 2003) (noting that "pepper spray ordinarily causes only temporary discomfort").  The Eleventh Circuit has not set forth a specific test to determine whether injuries from pepper spraying are more than *de minimis* but considers such question on a case-by-case basis. *Thompson v. Smith*, 805 F. App'x 893, 904-905 (11th Cir. 2020) (greater than *de minimis* injury occurred when the plaintiff was left with the chemical agents on his face for approximately 20 minutes; experiencing coughing, difficulty breathing, and a prolonged burning sensation; was forced to take an extended shower to exacerbate the effects of the pepper spray;

and was returned to a cell that remained contaminated with pepper spray residue for a least an

additional day). Here, as previously discussed, Plaintiff alleges that he was sprayed with an

excessive amount of spray and left in his closed, unventilated cell. He alleges he had to put his

head in the toilet in order to breathe. He further alleges that due to the chemical fumes, nurses and

inmates in his cell area had to be escorted out. At this stage of the case, making all reasonable

inferences in Plaintiff's favor, Plaintiff has plausibly stated more than a *de minimis* injury. [5] *See*

*Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008) (20-minute placement of prisoner in a small,

unventilated, contaminated cell after the lawful use of pepper spray constituted excessive force).

### 2. Failure to Protect.

Prison correctional officers may be held directly liable under § 1983 if they fail or refuse

to intervene when a constitutional violation occurs in their presence." *Terry v. Bailey*, 376 F.

App'x 894, 896 (11th Cir. 2010) (per curiam) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th

Cir. 1998)). In order for liability to attach, however, "the officers must have been in a position to

intervene." *Id.* In other words, "[a]n officer who is present at the scene and who fails to take

reasonable steps to protect the victim of another officer's use of excessive force, can be held liable

for his nonfeasance." *Crenshaw v. Lister*, 556 F.3d 1283, 1293-1294 (11th Cir. 2009). The inmate

---

[5]     It is well settled in the Eleventh Circuit that a prisoner cannot recover compensatory or
punitive damages for a constitutional violation unless he can demonstrate a more than *de minimis*
injury. *See Brooks v. Powell*, 800 F.3d 1295, 1307 (11th Cir. 2015) (collecting cases construing §
1997e(e) of the PLRA). Without a more than *de minimis* injury, the plaintiff can only recover
nominal damages. *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003) (A plaintiff claiming a
violation of his constitutional rights is entitled to nominal damages "even if he cannot prove actual
injury sufficient to entitle him to compensatory [or punitive] damages."); *see also Graham v.
Elliott*, 2018 U.S. Dist. LEXIS 126886, at *11, 2018 WL 3625863, at *4 (N.D. Fla. June 27, 2018)
(stating that nominal damages "are typically limited to $1.00 in the Eleventh Circuit"), *report and
recommendation adopted*, 2018 U.S. Dist. LEXIS 126565, 2018 WL 3622810 (N.D. Fla. July 30,
2018).

plaintiff bears the burden of demonstrating that the correctional officer defendant "was in a position to intervene but failed to do so." *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (per curiam) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008)).

In his complaint, Plaintiff alleges Captain Smith and Lieutenant McNeal came to his cell and that one officer sprayed with pepper spray without warning or justification, while the other officer just "stood there and watched" him be sprayed "excessively with tear gas for no apparent reason." (Doc. 1 at 11).   This allegation alone is simply insufficient to carry Plaintiff's burden of showing that the "non-spraying" officer was in a position to intervene.[6]  Namely, the crux of Plaintiff's claim is that the use of force was spontaneous and without warning, leaving no realistic opportunity for the use of force to be stopped.  Plaintiff fails to provide any details regarding the proximity of the officers to each other or describe how the non-spraying officer could have stopped the spraying.  Therefore, it is unclear whether the non-spraying officer could have prevented the spraying.  However, it is unclear from the record whether or not the non-spraying officer could have intervened in the 20 minutes Plaintiff was left in his cell "begging" to be let out and unable to breathe.  According to Plaintiff, after the spraying, nurses and other inmates were escorted from the area, but he was not removed from his contaminated cell until one of the officers observed Plaintiff with his head in the toilet.  Thus, it reasons that Lieutenant McNeal and/or Captain Smith remained near Plaintiff's cell and could have tempered the amount of force used by decontaminating Plaintiff and removing him from the unventilated cell immediately.

---

[6]    In his complaint, Plaintiff alleges Captain Smith was the bystander who failed to intervene; however, Defendants have confirmed that Captain Smith was the officer who sprayed the chemical agent on Plaintiff.  Therefore, it reasons that Lieutenant McNeal was the officer standing by, and Plaintiff's failure to intervene allegations should be properly asserted against Lieutenant McNeal.  However, for purposes of this motion, and the sake of clarity, the court will simply refer to the Defendants as "spraying" and "non-spraying" officer.

Notably, neither of the Defendants responded to this failure to intervene claim. In total, it seems premature to adjudicate this claim before Plaintiff's excessive force claim is decided.

Accordingly, the undersigned recommends that Defendants be DENIED summary judgment on Plaintiff's failure to intervene claim *at this time.*

## V.   CONCLUSION

Based on the foregoing, the undersigned recommends that summary judgment should be **DENIED**, and Plaintiff's Eighth Amendment claims should proceed against Defendants McNeal and Smith.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if

17

necessary in the interests of justice." <u>11th Cir. R. 3-1</u>.  In order to be specific, an objection must

identify the specific finding or recommendation to which objection is made, state the basis for the

objection, and specify the place in the Magistrate Judge's report and recommendation where the

disputed determination is found. An objection that merely incorporates by reference or refers to

the briefing before the Magistrate Judge is not specific.

     **DONE** this the <u>24th</u> day of  February 2021.

<u>/s/ Katherine P. Nelson</u>
**UNITED STATES MAGISTRATE JUDGE**
